A01A2309. WRIGHT v. DEPARTMENT OF NATURAL RESOURCES.
(562 SE2d 515)

SMITH, Presiding Judge.

This appeal arises out of the trial court's order granting summary judgment to the Georgia Department of Natural Resources (DNR) in a lawsuit filed by Winston Wright, in which Wright claimed that DNR's actions constituted a taking of his alligators. The trial court granted summary judgment on a number of grounds. We find at least three of these grounds to be proper bases for granting summary judgment, and we therefore affirm.

Wright owns and operates a farm in south Georgia. In 1963, he fenced in a portion of the 30- to 40-acre pond on the farm, in which an indeterminate but small number of alligators were living. Since that time, he has fed the alligators and their offspring. In 1982, Wright applied for a license from DNR to establish an alligator farm, proposing to use the alligators he had confined and their offspring as brood stock. The application was denied. The denial letter dated January

---

29, 1983, referred to former OCGA § 27-1-3 (a), now OCGA § 27-1-3 (b), which states in relevant part that

> [t]he ownership of, jurisdiction over, and control of all wild-life, as defined in this title, are declared to be in the State of Georgia, in its sovereign capacity, to be controlled, regu-lated, and disposed of in accordance with this title. . . . All wildlife of the State of Georgia is declared to be within the custody of the department for purposes of management and regulation in accordance with this title.

Based on this subsection, the commissioner who wrote the denial let-ter stated that "it is impossible for me to conclude that the alligators currently on your property are available to you to exploit in a com-mercial venture." The commissioner added, "We are in a position to cooperate fully with you in your alligator farming operation; how-ever, I must insist that your brood stock be obtained from a legal source, such as another alligator farmer, and not from the wildlife population of Georgia." Wright was informed that he could appeal the denial of his application, and although he filed an appeal, he later dismissed it.

In 1983 or 1984, however, Wright was allowed to purchase alli-gator brood stock from a Florida alligator farm in order to establish an alligator farm on his property. He acquired eight alligators. He then applied for and received an alligator farming license, under-standing that the alligators captured in 1963 were not included in the alligator farm. He was "specifically told [he] needed to keep the brood stock and the babies from that brood stock separate from the other alligators on [his] property." Wright complied for a time, keep-ing the Florida brood alligators and their offspring in a separate, fenced enclosure. In 1991, however, the Florida alligators escaped into the larger portion of the pond in which the Georgia alligators[1] lived. Wright's license was renewed in 1991 on condition that he recapture and separate the brood animals before collecting any eggs. He did not do so, however, and has not been allowed to collect eggs since that time.

In 1996, Wright contracted with Fonseca Fur & Hide to sell all of the estimated 650 alligators on his property. DNR would not allow the sale of all the alligators, and Wright refused to agree to sell only the alligators for which he had been licensed.

---

[1] Several times in this opinion, we refer to "Georgia alligators." We do so reluctantly and solely for the sake of convenience and brevity. We recognize that for literally millions of Georgians and Floridians, the term "Georgia Gators," or any approximation thereof, is an inherently offensive oxymoron. We apologize for any pain or distress caused by this unfamil-iar and unfortunate juxtaposition.

Wright then filed this action against DNR seeking just and adequate compensation for the taking of the alligators. He alleged that because he fenced and fed the alligators enclosed in 1963, he acquired a property interest in the alligators and their offspring. He contends on appeal that the taking resulted from DNR's failure to allow him to sell the alligators, for the taking of both the Georgia alligators in which he obtained a property interest and the Florida alligators purchased by him, and for the consequential damages resulting from DNR's refusal to allow him to collect alligator eggs. In addition, he argues that he lost "economically viable use of his farm property due to the presence of a large number of alligators thereon, resulting from the Department of Natural Resources' improper exercise of the police power granted it pursuant to law and regulations."

The trial court granted summary judgment to DNR on several grounds. First, the court found that Wright did not own the alligators. The trial court noted that the right to farm the captured alligators had already been adjudicated, that Wright had dismissed the appeal of that decision, and that he "cannot now resurrect that issue."[2] The court also found that the statute of limitation barred Wright's claims and that the State of Georgia cannot be sued for the presence of wildlife on a citizen's property. We agree with these conclusions, and we affirm.[3]

In concluding that Wright had no property interest in the alligators, the trial court relied on OCGA § 27-1-3, which provides that the ownership and control of wildlife are in the State of Georgia and concluded that Wright "does not and cannot own or control alligators which are not a part of a legal alligator farm which is operated in accordance with the Department of Natural Resources Rules and Regulations." Wright points out that this Code section was not enacted until 1968, after he confined and began maintaining the Georgia alligators and obtained a property interest in so doing, and therefore that the section is inapplicable here.

Wright correctly argues that OCGA § 27-1-3 had not been enacted in 1963, but the law in effect at that time did state that "[i]t shall be unlawful for any person to hunt, trap, *or in anywise engage*

---

[2] We note that the trial court's order does not appear to have prohibited Wright from selling the Florida brood alligators or their offspring. The order recites that "[s]ummary judgment on *ownership of the wild alligators and on the right to farm the wild alligators* is granted in favor of Defendant." (Emphasis supplied.)

[3] The trial court also concluded that a taking had not occurred because Wright did not establish a "complete taking," that Wright had no constitutional right to an alligator farming license, and that there could be no taking under federal law exclusive of 42 USC § 1983. We need not reach Wright's contentions regarding these issues, as the trial court's decision was right for other reasons discussed in this opinion.

*in the activity of capturing alligators* without first obtaining from the commission, a special annual alligator hunter's license." (Emphasis supplied.) Ga. L. 1956, pp. 590, 595. Wright did not have a license to capture the alligators when they were confined. And when he first claimed a property interest in 1982, OCGA § 27-1-3 provided that ownership of wildlife was in the State of Georgia. Because Wright failed to abide by the law at the outset in acquiring the alligators, and because the law in effect at the time he applied for a license placed ownership of wildlife in the State of Georgia, we cannot conclude that he ever obtained a property interest in those alligators.

But even if this were not so, and Wright somehow legally acquired a property interest in the Georgia alligators, the trial court correctly concluded that the lawsuit was barred by the applicable statute of limitation, which was four years after the right of action accrued. See generally OCGA § 9-3-30 (four-year statute of limitation for actions concerning damage to realty); *Robinson v. Dept. of Transp.*, 195 Ga. App. 594 (394 SE2d 590) (1990) (four-year statute of limitation governing trespass to real property applicable in action alleging taking). See also *Southfund Partners v. City of Atlanta*, 221 Ga. App. 666, 667-668 (1) (472 SE2d 499) (1996). We find no merit in Wright's argument that the operative date for determining when the limitation period began to run was February 6, 1996, the date on which DNR denied him the right to sell the alligators. Wright knew as early as 1982 that the State claimed to own the alligators on his property, and he was prohibited in 1991 from collecting eggs after he refused to separate the Georgia alligators from the brood alligators purchased in Florida. Consequently, he knew, or should have known, that the State claimed a property interest in the alligators and their offspring no later than 1991. The four-year statute of limitation had expired long before he filed this lawsuit in 1998.

Alternatively, Wright argues that if the State claims to own the alligators, because the State has not allowed him to remove the alligators, they constitute a nuisance and that the statute of limitation for this claim has not expired. Assuming, without deciding, that Wright's complaint states a claim for nuisance, OCGA § 27-1-3 (b) provides that DNR is "immune from suit and shall not be liable for any damage to life, person, or property caused directly or indirectly by any wildlife."

The trial court's order granting summary judgment was correct for more than one reason, and a judgment right for any reason will be affirmed. See, e.g., *Young Constr. v. Old Hickory House #3*, 210 Ga. App. 559, 560 (2) (b) (436 SE2d 581) (1993). We therefore affirm.

We note Wright's one-sentence argument in the conclusion of his appellate brief that even if this "Court should disagree with the law as presented herein regarding capturing of wild alligators, the case

should return to the trial court for a proper factual determination of which alligators came from the wild and which came from the brood stock in Florida." But, as correctly argued by DNR, "[t]his request was not part of his complaint or within the province of the trial court." An appellant cannot use an appellate brief to expand his or her "enumeration of errors by arguing the incorrectness of a trial court's ruling not mentioned in the enumeration. Appellate review cannot be enlarged or transformed through switching, shifting, or mending one's hold." (Punctuation and footnotes omitted.) *Anderson v. State*, 251 Ga. App. 785, 786 (554 SE2d 811) (2001). See also *Dental One Assoc. v. JKR Realty Assoc.*, 228 Ga. App. 307, 308 (2) (491 SE2d 414) (1997). We review errors made in the trial court rather than "assertions made by appellant and brought directly to this court." (Punctuation and footnote omitted.) *Anderson*, supra at 786.

*Judgment affirmed. Barnes and Phipps, JJ., concur.*

DECIDED MARCH 26, 2002 — 

*Gregory, Christy & Maniklal, Hardy Gregory, Jr., Simpson & Cross, Ralph F. Simpson, Robert B. Sumner*, for appellant.

*Thurbert E. Baker, Attorney General, Kathleen M. Pacious, Deputy Attorney General, John C. Jones, Senior Assistant Attorney General, Devon A. Orland, Assistant Attorney General, Berrien L. Sutton*, for appellee.